***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rideout with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS *Page 2 
1. An employment relationship existed between the named plaintiff and the named employer on or about July 6, 2006, the date of the alleged incident;
2. The named employer is a corporation formed under the laws of the State of North Carolina and having its principal place of business in Raleigh, North Carolina;
3. It is stipulated that all parties have been correctly designated and there is no question as to mis-joinder or non-joinder of parties.
4. Defendant-carrier, Zurich Insurance Company, is the insurance carrier liable on the risk;
5. Plaintiff's average weekly wage is $880.00 and compensation rate is $566.66; plaintiff has not received any temporary total disability benefits, to date; and
6. On or about August 9, 2007, plaintiff underwent cervical fusion surgery.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On July 6, 2006, plaintiff worked as a pipefitter for defendants. As of the date of hearing before the Deputy Commissioner, plaintiff was forty-two years old and had a tenth grade education.
2. On July 6, 2006, plaintiff was attempting to move a pipe support across a catwalk when he felt as if he pulled a muscle in his back. Plaintiff also indicated he "snatched" his arm while trying to lower the pipe support over the railing using a chain. Plaintiff did not seek medical attention on that date. *Page 3 
3. Following the date of accident, plaintiff continued to work for the defendant-employer. Approximately two weeks after the injury, plaintiff missed work due to dehydration and diarrhea.
4. On July 25, 2006, plaintiff sought treatment at Family Medicine of Harrellsville for dehydration and diarrhea.
5. The following day, July 26, 2006, plaintiff presented to Dr. Bidwell at the Family Practice of Franklinsville. On July 27, 2006, plaintiff underwent an MRI of the cervical spine that showed a herniated disc at C5-6 and disc protrusion at C6-7 with bilateral neural foraminal narrowing and spinal canal stenosis at C5-6 and C6-7.
6. Dr. Bidwell testified that it was reasonable that plaintiff stayed out of work from that day forward. During a telephone conference with plaintiff, Dr. Bidwell indicated plaintiff should stay out of work pending evaluation by a specialist.
7. Plaintiff presented to the Emergency Department at Roanoke-Chowan Hospital on August 31, 2006, and reported pain in his neck. Plaintiff was discharged on the same date with pain medication and advised to follow-up in one week.
8. On October 16, 2006, plaintiff returned to Family Medicine of Harrellsville in Harrellsville, North Carolina and reported back pain. On November 2, 2006, plaintiff returned to Family Medicine of Harrellsville for follow-up of back pain. He reported that he was in a wreck the previous week and was placed in jail. On November 6, 2006, plaintiff returned to Family Medicine of Harrellsville and complained of continued cervical pain and numbness and tingling in his cervical area radiating bilaterally. He reported that he had been out of medication for two days and was scheduled to see Dr. Voos for follow-up. *Page 4 
9. Plaintiff was evaluated by Dr. Kurt Voos at the Center for Scoliosis and Spinal Surgery on December 11, 2006. Plaintiff was advised to undergo epidural steroid injections of the cervical spine and given pain medication. Plaintiff indicated that he was interested in surgical intervention, but was advised to exhaust conservative options first.
10. Plaintiff underwent a lumbar spine MRI without contrast at Roanoke-Chowan Hospital in Ahoskie, North Carolina, on December 18, 2006. The findings were mild degenerative changes at L5-S1 and L4-5 without central canal stenosis or nerve root compression. He had minimal foraminal narrowing at L4-5.
11. On December 20, 2006, plaintiff presented to Larabee Chiropractic and Rehab with complaints of right side leg and right arm pain. Plaintiff attended treatment sessions at this facility several times per week and his last visit was May 3, 2007.
12. Plaintiff presented to Dr. Raymond Minard at Pitt County Memorial Hospital in Greenville, North Carolina, on January 17, 2007, for a cervical epidural steroid injection.
13. On January 24, 2007, the Plaintiff returned to Dr. Kurt Voos at the Center for Scoliosis and Spinal Surgery in Greenville, North Carolina, for a follow-up examination of his lumbar and cervical spine. Dr. Voos opined that the MRI of the lumbar spine showed no significant pathology that would need to be addressed with surgery. He was advised to undergo physical therapy for low back pain and scheduled for an additional injection to the cervical spine. 14. Plaintiff underwent another cervical epidural steroid injection with Dr. Minard at Pitt County Memorial Hospital on January 31, 2007.
14. On February 6, 2007, Plaintiff was incarcerated as a result of his conviction for assault on a female. *Page 5 
15. Plaintiff contacted Dr. Voos' office on February 21, 2007, and reported that he was incarcerated. He requested a note that he could sweep and mop floors. On February 23, 2007, Dr. Voos wrote a note advising that the Plaintiff could sweep and mop floors as tolerated.
16. On April 1, 2007, the Plaintiff was released from incarceration.
17. Plaintiff presented no evidence of a job search following his release from incarceration.
18. On May 3, 2007, plaintiff returned to Family Medicine of Harrellsville and reported right shoulder pain that was occasional or constant as well as aching in his left shoulder.
19. Plaintiff underwent an MRI of the right shoulder on May 6, 2007. The impression was right rotator cuff tendonopathy with articular surface partial tear and moderately severe acromioclavicular hypertrophy.
20. Plaintiff returned to Dr. Voos on May 16, 2007, and reported that the epidural steroid injections provided him with fairly good pain relief, but that the relief was short-lived. He was advised to undergo a CT myelogram in anticipation of surgical intervention of the cervical spine.
21. On May 23, 2007, plaintiff presented to Dr. Lawrence Larabee at Northeastern Orthopedics in Ahoskie, North Carolina. He was diagnosed with a right shoulder partial rotator cuff tear and moderate AC joint arthritis. Dr. Larabee recommended a possible AC joint injection during the next visit if his symptoms were not improved.
22. On June 11, 2007, plaintiff presented to Eastern Radiology for a cervical myelogram and CT of the cervical spine. The cervical myelogram showed developmental cervical spinal canal narrowing, C6-C7 disc space narrowing, mild retrolisthesis, mild ventral epidural impression, and amputation of the C7 nerve root sleeves bilaterally right greater than *Page 6 
left and C5-C6 disc space narrowing, mild retrolisthesis, posterior uncinate spurring and mild ventral epidural impression. The impressions from the cervical spine CT were C5-C6 mild 2 mm translational motion between upright lateral flexion and extension and mild physiologic subluxation at all levels from C2 through C5.
23. On June 18, 2007, plaintiff returned to Dr. Voos to review the results of the CT myelogram of the cervical spine. Based on the findings on the CT myelogram, Dr. Voos recommended an anterior cervical discectomy and fusion C5-C6 and C6-C7. Plaintiff was written out of work until further notice.
24. On August 9, 2007, plaintiff presented to Pitt County Memorial Hospital where Dr. Voos performed an anterior cervical discectomy and fusion C5-6, C6-7 with allograft bone instrumentation. .
25. On August 20, 2007, plaintiff returned to Dr. Voos for his first post-operative visit. An x-ray of the cervical spine was obtained and showed an anterior plate and screw fixation of C5 to C7 with interbody grafting C5-C6 and C6-C7. There was no evidence of hardware failure or implant migration.
26. Plaintiff was evaluated by PA Michael Koenig at Northeastern Orthopedics on September 14, 2007. Plaintiff was given a right shoulder cortisone injection and advised to work on rotator cuff conditioning exercises in physical therapy. PA Koenig advised that plaintiff may ultimately benefit from subacromial decompression and arthroscopic rotator cuff repair. Plaintiff was advised to exhaust conservative treatment options prior to proceeding with any surgical measures. *Page 7 
27. On September 17, 2007, Dr. Voos provided a work note indicating that plaintiff could proceed with physical therapy for his shoulder as long as treatment was directed to his shoulder and not his neck.
28. On October 17, 2007, plaintiff returned to Dr. Voos two months out from his multilevel anterior cervical discectomy and fusion. X-rays revealed ongoing consolidation of the fusion without evidence of hardware failure. Plaintiff was advised that he could return to sedentary or light-duty work, avoiding work above shoulder level or overhead work until evaluated in four to six weeks.
29. Dr. Voos testified, and the Full Commission finds as fact, that the work related injury of July 6, 2006, caused plaintiff's spinal condition.
30. Dr. Bidwell indicated during his deposition that he was unaware that plaintiff had a rotator cuff tear. Accordingly, Dr. Bidwell's tentative testimony regarding the causation of the rotator cuff tear is given little weight.
31. Based on the greater weight of the evidence, plaintiff sustained a compensable specific traumatic incident on July 6, 2006.
32. Due to the compensable specific traumatic incident, plaintiff suffered an injury to his spine that resulted in cervical fusion surgery.
33. Due to the compensable injury, plaintiff was instructed to stay out of work by Dr. Bidwell. As such, plaintiff became temporarily totally disabled on July 27, 2006.
34. Plaintiff remained totally disabled until the date of his incarceration on February 6, 2007. During his incarceration plaintiff requested, and received, a note releasing him to return to light duty work. *Page 8 
35. Based on the greater weight of the evidence, plaintiff was able to perform some work following his incarceration, as evidenced by Dr. Voos' note of February 23, 2007.
36. Plaintiff was written out of work by Dr. Voos on June 18, 2007, and was totally disabled until October 17, 2007, at which time Dr. Voos released him to sedentary or light duty work.
37. The Full Commission finds that plaintiff was capable of performing some work as of October 17, 2007. Plaintiff presented no evidence that he was unable to find work after a reasonable job search, or that it would be futile for him to look for work due to other circumstances.
38. Plaintiff failed to prove that he was incapable of earning wages due to his July 6, 2006 injury after October 17, 2007.
39. Plaintiff's failed to prove by the greater weight of the evidence that his current shoulder condition is causally related to the injury of July 6, 2006.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable specific traumatic incident on July 6, 2006. N.C. Gen. Stat. § 97-2(6).
2. Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions removed from the ordinary experience of laymen, only an expert witness can give a competent opinion as to the nature of and the cause of the injury. Young v.Hickory Business Furniture, supra; Click v. Pilot Freight Carriers,Inc., 300 N.C. 164, *Page 9 
167, 265 S.E.2d 389, 391 (1980). As indicated above, the expert testimony fails to establish a causal connection between the injury and plaintiff's shoulder condition. As such, the shoulder condition is not compensable. Based on the findings of fact above, plaintiff has shown a causal connection between the treatment for his spine and the injury.
3. As a result of his compensable injury, plaintiff is entitled to medical treatment for his spine, including treatment as recommended by Dr. Voos, for so long as such treatment is reasonably necessary to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, supra. Plaintiff has not carried his burden of proving ongoing disability. Accordingly, plaintiff is only entitled to indemnity compensation for those *Page 10 
dates when he was taken out of work by his physicians, including July 27, 2006 through February 6, 2007, and from June 18, 2007 through October 17, 2007.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability benefits in the amount of $566.66 per week for the periods of July 27, 2006 through February 6, 2007, and from June 18, 2007 through October 17, 2007, subject to the attorney's fee awarded below. This compensation has accrued and shall be paid to plaintiff in a lump sum.
2. Defendants shall pay to plaintiff's counsel s reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff herein. This fee is based upon compensation that has accrued and, thus, shall be paid to plaintiff's counsel in a lump sum.
3. Defendants shall pay plaintiff medical expenses for plaintiff's spinal condition, including treatment by Dr. Voos, for so long as such treatment is reasonably necessary to effect a cure, provide relief, or lessen the period of disability.
4. Each side shall pay its own costs.
This 8th day of January 2009.
 S/_________________________
 BUCK LATTIMORE
 COMMISSIONER
CONCURRING:
 S/_________________________ DIANNE C. SELLERS COMMISSIONER
 S/_________________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1